# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RODNEY LILLARD,<br><br>　　　　　Defendant. | 8:17CR193<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 37) of the magistrate judge[1] recommending the Court deny defendant Rodney Lillard's ("Lillard") Motion to Suppress (Filing No. 21). Lillard objects (Filing No. 38) to the Findings and Recommendation. For the reasons stated below, Lillard's objection is overruled and the Motion to Suppress is denied.

## I.　BACKGROUND

On May 30, 2017, Sarpy County Sheriff's deputies Earl Johnson ("Deputy Johnson") and Jason Miller ("Deputy Miller" and collectively, "deputies") conducted a traffic stop of Lillard at the Nebraska Crossing shopping center near Interstate 80 and Highway 31. Prior to the stop, Lillard, who was driving a blue Chevrolet Equinox, had circled the shopping center parking lot three times in the previous fifteen minutes before leaving the parking lot. Deputy Johnson followed Lillard and initiated a traffic stop after Lillard failed to signal a lane change. Lillard returned to the parking lot. Deputy Miller pulled his patrol car perpendicular to the Equinox as Deputy Johnson pulled behind.

Lillard opened the door, and Deputy Johnson told him to step out of the car. When Lillard exited the Equinox, Deputy Johnson smelled alcohol and believed Lillard

---

[1]The Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska.

to be intoxicated based on his swaying and uncertain body movements, bloodshot and glassy eyes, and slurred speech. Deputy Johnson handcuffed Lillard, and Deputy Miller closed the Equinox door. After some back and forth, Deputy Johnson asked Lillard if he had his "wallet on you somewhere?"[2] Lillard said no.

Deputy Johnson began searching the Equinox, ostensibly in an attempt to find Lillard's wallet. Deputy Johnson walked around the car, opening each of the four doors and looking on the seats. During this search, Deputy Johnson claimed to see an open beer can and spilled beer in the front center console. He returned to the driver's side and looked under the front seat, discovering a loaded handgun.

Deputy Johnson placed Lillard in the back of his cruiser before briefly speaking with Deputy Miller. Deputy Johnson told Deputy Miller he was going to try to identify Lillard and also said, "This is gonna be a cluster." He explained to Deputy Miller that he initiated the traffic stop because Lillard failed to signal a turn.

Deputy Johnson entered his cruiser and asked Lillard to identify himself. Lillard gave Deputy Johnson his name and date of birth from which Deputy Johnson learned Lillard was a convicted felon currently on federal probation. Deputy Johnson knew the Equinox would have to be towed because Lillard would be taken into custody for unlawfully possessing the firearm while a felon. *See* Neb. Rev. Stat. § 28-1206. At this point, both deputies turned their microphones off.

Sarpy County Sheriff's Office Standard Operating Procedure ("SOP") requires any vehicle to be inventoried for valuable items prior to being towed. Any contraband found during an inventory search should be taken into evidence, and any valuable items

---

[2] At the hearing on the Motion to Suppress, Johnson initially testified he did not ask Lillard about his wallet but, during later questioning, recalled asking Lillard if he had his wallet on him. Johnson's question is audible in the video. Although the magistrate judge found otherwise, the Court finds Deputy Johnson asked Lillard about a wallet at that time.

2

should be taken into custody for safe keeping. Any property removed from the vehicle should be noted on the Tow/Impound Form ("tow form") as well as on an Evidence/Property Form ("evidence form"). According to Deputy Johnson's testimony, an inventory search includes looking under the seats in the vehicle.

Pursuant to SOP, the deputies performed an inventory search of the Equinox. This took approximately thirteen minutes. During this time, Deputy Miller turned his microphone back on. Deputy Johnson approached Deputy Miller shortly after and asked him if his microphone was on. Deputy Miller indicated it was, and Deputy Johnson asked him to turn it off. Deputy Miller later testified that this was so he and Deputy Johnson could speak about Deputy Johnson's initial search.[3]

After the inventory search, both deputies turned their microphones back on. Deputy Johnson performed a preliminary breath test on Lillard, and Lillard tested over the legal limit. Deputy Johnson told Lillard he was being arrested for driving under the influence of alcohol ("DUI"), in violation of Neb. Rev. Stat. § 60-6,196, and took him to the Sarpy County jail.

Deputy Miller filled out a tow form and an evidence form. The evidence form listed the firearm recovered from the Equinox and Deputy Miller's in-car camera recording. Deputy Miller made several mistakes on the tow form, including listing the incorrect vehicle model and failing to circle "yes" in the box next to the driver's name that indicated if the driver was arrested. The tow form did not list any property removed from the Equinox. Deputy Johnson submitted a warrantless arrest affidavit containing his factual recollections of the encounter.

---

[3]The deputies did not offer any valid reason for silencing their microphones at this time, and it is a practice that the Court frowns upon. However, it does not change the result in this case.

## II. DISCUSSION

Lillard moved to suppress the handgun recovered during Deputy Johnson's search, claiming both the initial traffic stop and initial search violated his rights under the Fourth Amendment to the United States Constitution. The government argued at the hearing on the Motion to Suppress (1) the initial traffic stop was lawful as it was supported by probable cause, and (2) the search was lawful either under the automobile exception or as a search incident to arrest. *See Missouri v. McNeely*, 569 U.S. 141, 150 n.3 (2013) (listing the automobile exception and searches of a person incident to arrest as exceptions to the warrant requirement). Further, the government claimed even if the search was illegal, "the firearm was admissible under the inevitable discovery exception to the exclusionary rule because it would have been discovered during a later, lawful inventory search." *United States v. Garreau*, 658 F.3d 854, 856 (8th Cir. 2011).

The magistrate judge determined the initial traffic stop was supported by probable cause but found the search was not lawful either under the automobile exception or as a search incident to arrest. However, the magistrate judge agreed with the government an inventory search would have disclosed the firearm, the inevitable-discovery exception to the exclusionary rule applied, and the evidence should not be suppressed. Lillard objected only to the magistrate judge's finding that the inevitable-discovery exception applied, and the government did not object to any of the findings. Consequently, the Court will limit its analysis to the applicability of the inevitable-discovery exception to the exclusionary rule.

The exclusionary rule "bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-32 (2011). "The inevitable discovery doctrine provides an exception to the exclusionary rule where 'the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Craddock*, 841 F.3d 756, 760 (8th Cir. 2016) (quoting *Nix v. Williams*,

4

467 U.S. 431, 444 (1984)). "For that exception to apply the government must show (1) a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) an active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *United States v. Allen*, 716 F.3d 382, 387 (8th Cir. 2013). The government bears the burden of proving the exception applies by a preponderance of the evidence. *United States v. Glenn*, 152 F.3d 1047, 1049 (8th Cir. 1998).

A. **Reasonable Probability of Discovery by Lawful Means**

The inevitable-discovery doctrine first requires the government to "show a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct." *Id*. The government argues the inventory search is the lawful means that would have inevitably led to the discovery of the firearm.

"The inventory search exception to the Fourth Amendment's warrant requirement permits law enforcement to inventory the contents of a vehicle that is lawfully taken into custody, even without a warrant or probable cause to search." *Garreau*, 658 F.3d at 857. "An inventory search is reasonable and constitutional if it is conducted according to standardized police procedures." *Id*. "Even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not a pretext for an investigatory search." *United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011). However, if there is "something to suggest the police raised 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence," then the inventory search is unreasonable. *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (quoting *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir. 1993)).

Lillard compares Deputy Johnson and Deputy Miller's inventory search of the Equinox to the search in *Taylor.* In *Taylor*, a police officer who performed an inventory search discovered hundreds of tools, pieces of equipment, as well as cocaine, but the

5

officer failed to itemize or list the tools in the report, only describing them as "misc. tools." 636 F.3d at 463. Because the inventory search exception exists "for 'the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger,'" the failure to catalog the tools showed the purpose of the search was to find evidence and not to protect the owner from theft or the police from liability. *Id*. at 464-65 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)).

However, the errors made in this case are not comparable to *Taylor*. The first mistake, listing the wrong vehicle model, only shows Deputy Miller was not paying close attention to detail and is not evidence the inventory search was pretextual. The second mistake, failing to circle whether Lillard had been arrested or not, is similar in nature and is mitigated by the fact that Deputy Miller marked "Arrest" as the reason for impound elsewhere on the tow form. Lillard claims Deputy Miller also erred by failing to list the firearm recovered from the Equinox in the space for "Property Removed from vehicle" on the tow form. This is not an error. The SOP requires property removed during an inventory search to be listed in that space, but the firearm was not recovered during the inventory search. It was found during an earlier search and recorded on the evidence form. Finally, Lillard complains there is no mention on the tow form of the open beer can Deputy Johnson claims was in the center console. However, this is not a valuable item and failing to record it does not open the police to liability or subject Lillard to the risk of theft. Even though Deputy Miller committed some minor mistakes during the inventory search, "there is no evidence the police acted in bad faith or for the sole purpose of investigation." *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998).

The deputies conducted the inventory search pursuant to SOP, with a few minor reporting mistakes, and the inventory search would have found the weapon. The

6

inventory search was reasonable and constitutes a reasonable probability of discovering the firearm by lawful means.

### B. Substantial, Alternative Line of Investigation

Second, the government must show an "active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation." *Allen*, 716 F.3d at 387. The deputies did not perform a traffic stop or question Lillard because they believed him to be in possession of a firearm; on the contrary, Lillard's initial interaction with police was due to his violation of a traffic law, and the deputies' subsequent discovery he was likely driving under the influence. That constitutes a substantial, alternate line of investigation.[4]

Because the government has met its burden of proving both requirements for the inevitable-discovery exception, the evidence gathered from Deputy Johnson's initial search of Lillard's Equinox will not be excluded.

## III. CONCLUSION

Although Deputy Johnson violated Lillard's Fourth Amendment rights by searching the Equinox, the inevitable-discovery exception to the exclusionary rule applies. There is a reasonable probability Deputy Johnson and Deputy Miller would have discovered the firearm through the lawful means of an inventory search, and the deputies were pursuing a substantial, alternative investigation into a potential DUI. Accordingly,

    IT IS ORDERED:
1. Lillard's Objection to Magistrate's Findings and Recommendation (Filing No. 38) is overruled.
2. The magistrate judge's Findings and Recommendation (Filing No. 37) are accepted with the modification stated in footnote two.

---

[4] Although the inventory search was done prior to Lillard's arrest for DUI, that is not relevant. If Johnson had not performed his initial search, the inventory search would have been done after Lillard's arrest for DUI and the firearm would inevitably have been discovered.

3. Lillard's Motion to Suppress (Filing No. 21) is denied.

Dated this 16th day of January, 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge